

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

NOV 3 0 2004

2004 NOV 30   PM 4: 55

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MARK JUNEAU** | * | |
| **Plaintiff,** | * | |
| | * | **CIVIL ACTION NO. 03-3153** |
| **v.** | * | |
| | * | **SECT. "S" MAG. "4"** |
| **BUCK KREIHS CO., INC. and** | * | |
| **INTERNATIONAL ASSOCIATION OF** | * | |
| **MACHINISTS AND AEROSPACE WORKERS,** | * | |
| **CRESCENT CITY LODGE LOCAL 37, AFL-CIO** | * | |
| **Defendants.** | * | |

**************************************************

## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

NOW INTO COURT, through undersigned counsel comes Defendant, Buck Kreihs

Company, Inc., and pursuant to FED. R. CIV. P. 56, moves for summary judgment for the reasons

set forth in its Memorandum in Support of its Motion for Summary Judgment.

Respectfully submitted,

Robert K. McCalla
(LA Bar Roll No. 9233)
Fisher & Phillips LLP
201 St. Charles Avenue
Suite 3710
New Orleans, Louisiana  70170
Telephone:  (504) 522-3303
Facsimile:  (504) 529-3850

**COUNSEL FOR DEFENDANT,**
**BUCK KREIHS COMPANY, INC.**

___ Fee_____
___ Process____
_X_ Dktd_____
___ CtRmDep____
___ Doc. No._____

NewOrleans 246021 1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served via hand delivery to:

|  |  |  |
|---|---|---|
| Robert E. McKnight, Jr. | | William Lurye |
| Murphy & McKnight, LLC | | Andrea J. Wilkes |
| 862 Camp Street. | and | Robein, Urann & Lurye |
| New Orleans, LA  70130 | | 2540 Severn Avenue |
| | | Suite 400 |
| | | Metairie, LA  70002 |

on this 30th day of November, 2004.

_____
ROBERT K. McCALLA

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

MARK JUNEAU               *
           **Plaintiff,**   *
                       *    **CIVIL ACTION NO. 03-3153**
**v.**                       *
                       *    **SECT. "S" MAG. "4"**
**BUCK KREIHS CO., INC.** and   *
**INTERNATIONAL ASSOCIATION OF**   *
**MACHINISTS AND AEROSPACE WORKERS,**   *
**CRESCENT CITY LODGE LOCAL 37, AFL-CIO**   *
             **Defendants.**   *
**********************************************

## DEFENDANT'S STATEMENT OF FACTS IN
## SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1.     Plaintiff, Mark Juneau, was employed by Buck Kreihs Company as a machinist on October 27, 1995. As a machinist, Plaintiff was in the collective bargaining unit represented by Local 37 of the Machinist Union and was covered by the collective bargaining agreements negotiated between the Union and the Company. (Sworn Declaration by Mr. Baraldi).

2.     At his deposition he testified that on April 26, 2001, he was working in his yard at home and stepped into a hole and severely injured his back causing him to be totally and permanently disabled. On November 7, 2003, Plaintiff filed this law suit claiming that Buck Kreihs has breached the collective bargaining agreement with Local 37 in two respects.

3.   First, Mr. Juneau claims that under the collective bargaining agreement Buck Kreihs is

liable for certain tools Plaintiff claims he left on the premise at the time he became

disabled on April 26, 2001 pursuant to the following provisions in Article X of the

collective bargaining agreement.

> Section 2.   It shall be the employee's responsibility to
> safeguard his tools, and to place them in designated tool box
> storage areas. The Employer shall only be responsible for the loss
> of an employee's tools which were lost from areas designed by the
> Employer, including areas on ships and in the shop and yard. The
> Union will supply a list of tools required to perform the job in their
> craft and those which are customarily used by the majority of the
> Journeymen in their craft. The Employer has the right to require
> an inventory of personal tools and to call police for an
> investigation of any personal tool loss claim.

4.   Second, Mr. Juneau claims Buck Kreihs failed to pay him vacation pay he was entitled to

under the collective bargaining agreement when he became disabled pursuant to Article

XX of the collective bargaining agreement which provides in part as follows.

> Section 2.   Each employee upon completion of four years of
> continuous employment from date of employment with the
> Employer shall be entitled to two weeks  vacation with pay on the
> basis (10) ten  eight (8) hour days at his regular straight time rate
> of pay provided such employee during the first three years of the
> four year period has worked a total of 3,000 hours or more for the
> Employer and who in his fourth year of the four year period has
> worked a minimum of 1,000 hours.

5.   The vacation provisions have uniformly and consistently been interpreted to require that

an employee must work 1,000 hours during the 12 month period from his anniversary

date to the his next anniversary date to qualify for any vacation pay.

6.   Similarly, if an employees ceases his employment for any reason, the vacation provisions

have uniformly and consistently been interpreted to require that the employee must work

1,000 from his last anniversary date prior to the date his employment ceases in order to

qualify for vacation pay.

7.  Mr. Juneau's date of employment and his anniversary date was October 27, 1995.

8.  During the period October 27, 2000 until he became disabled on April 26, 2001 he worked a total of 848 and one half hours.

9.  This is shown on his payroll records which are attached to Mr. Baraldi's sworn declaration as Appendix B.

10. They establish that he worked 246 hours during the period October 27, 2000 until the end of the year, and that he worked a total of 602 and one half hours up until his total permanent disability on April 26, 2001.

11. Since he had not worked 1,000 hours during this period, under language of Section 2 of Article XX, and the long established uniform past practice, Mr. Juneau is not entitled to any vacation pay.  (Sworn declaration by Mr. Baraldi).

12. ARTICLE XXI –GRIEVANCE PROCEDURE, and ARTICLE XXII – ARBITRATION, of the collective bargaining agreement between Local 37 and Buck Kreihs Company contains a grievance and arbitration procedure and provides that any disputes or grievances concerning interpretation and application of the agreement "shall be settled in accordance with the" procedure set forth in the contract.

13. As set forth in Section 2, subparagraph a, under the procedure the first step requests that the "grievance shall be submitted in writing by the Steward to the Foreman or Superintendent within seven (7) days of the alleged infraction".

14. The Union has not filed a grievance with the Company concerning Plaintiff's claims his tools were stolen and that he was not paid vacation pay owed under the terms of the collective bargaining agreement.

15.  Mr. Juneau readily admits that he got along with one of the union stewards,  Wayne English, "just fine".

Respectfully submitted,

Robert K. McCalla
(LA Bar Roll No. 9233)
Fisher & Phillips LLP
201 St. Charles Avenue
Suite 3710
New Orleans, Louisiana  70170
Telephone:  (504) 522-3303
Facsimile:  (504) 529-3850

**COUNSEL FOR DEFENDANT,
BUCK KREIHS COMPANY, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served via hand delivery to:

| | | |
|---|---|---|
| Robert E. McKnight, Jr. | | William Lurye |
| Murphy & McKnight, LLC | | Andrea J. Wilkes |
| 862 Camp Street. | and | Robein, Urann & Lurye |
| New Orleans, LA  70130 | | 2540 Severn Avenue |
| | | Suite 400 |
| | | Metairie, LA  70002 |

on this 30th day of November, 2004.

ROBERT K. McCALLA

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MARK JUNEAU                                    *
                          Plaintiff,           *
                                               *      CIVIL ACTION NO. 03-3153
v.                                             *
                                               *      SECT. "S" MAG. "4"
BUCK KREIHS CO., INC. and                      *
INTERNATIONAL ASSOCIATION OF                   *
MACHINISTS AND AEROSPACE WORKERS,              *
CRESCENT CITY LODGE LOCAL 37, AFL-CIO          *
                          Defendants.          *
**********************************************

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANT, BUCK KREIHS COMPANY

## I.      PRELIMINARY STATEMENT

Plaintiff is a former employee of Buck Kreihs Company.  He has filed this lawsuit against

Buck Kreihs Company and his Union, Local 37 of the International Association of Machinist

(hereafter "Local 37").  He alleges Buck Kreihs Company breached the collective bargaining

agreement between the company and Local 37 by not paying him vacation pay and for some

tools he alleges were stolen from him.  He also alleges the Union has failed to represent him

fairly because it refused to process a grievance on his behalf with respect to the tools he alleges

were stolen.

It is undisputed Plaintiff was a member of a collective bargaining unit represented by Local 37 and that the terms and conditions of Plaintiff's employment were governed by the collective bargaining agreement in existence between Buck Kreihs and Local 37.

Under the well established legal principles developed under the Labor Management Relations Act, 29 U.S.C. § 141 *et. seq.,* any claims for alleged breach of the collective bargaining agreement must be resolved in the context of the union-management relationship under the collective bargaining agreement procedures rather than through an employee's federal court lawsuit.  Where, as here, the collective bargaining agreement provides for the resolution of disputes arising under the agreement through the grievance and arbitration procedure, any claims for breach of the collective bargaining agreement must be resolved in accordance with those procedures.

The employee must request that the Union process a grievance on his behalf.  Absent a request by the employee to process a grievance, the employee cannot subsequently be heard to complain.  Even if the employee makes a request that a grievance be processed on his behalf, the Union, as the gate keeper, has a duty to determine whether it makes sense to process the claim through the grievance and arbitration procedure.  If the Union decides not to process the claim, that is the end of the matter unless the employee can prove the Union's failure to process the claim violated its duty of fair representation.

Here, it is undisputed the Union has not submitted a written grievance concerning the collective bargaining contract claims Plaintiff now seeks to pursue in federal court.  Plaintiff admits he got along with one of the Union Stewards, Wayne English, "just fine" and has offered no evidence the Union breached its duty of fair representation.  Accordingly, Plaintiff's claims must be dismissed in their entirety.

2

Further, with respect to Plaintiff's claim for vacation pay, under the language of the agreement and the uniform and consistent practice under the agreement, Plaintiff did not qualify for vacation pay at the time he became totally and permanently disabled and ceased working for Buck Kreihs Company.

## II.    **STATEMENT OF THE FACTS**

Plaintiff, Mark Juneau, was employed by Buck Kreihs Company as a machinist on October 27, 1995. As a machinist, Plaintiff was in the collective bargaining unit represented by Local 37 of the Machinist Union and was covered by the collective bargaining agreements negotiated between the Union and the Company. (Sworn Declaration by Mr. Baraldi).

At his deposition he testified that on April 26, 2001, he was working in his yard at home and stepped into a hole and severely injured his back causing him to be totally and permanently disabled.[1]   On November 7, 2003, Plaintiff filed this law suit claiming that Buck Kreihs has breached the collective bargaining agreement with Local 37 in two respects.

First, Mr. Juneau claims that under the collective bargaining agreement Buck Kreihs is liable for certain tools Plaintiff claims he left on the premise at the time he became disabled on April 26, 2001 pursuant to the following provisions in Article X of the collective bargaining agreement.

> Section 2.   It shall be the employee's responsibility to safeguard his tools, and to place them in designated tool box storage areas. The Employer shall only be responsible for the loss of an employee's tools which were lost from areas designed by the Employer, including areas on ships and in the shop and yard. The Union will supply a list of tools required to perform the job in their craft and those which are customarily used by the majority of the Journeymen in their craft. The Employer has the right to require an inventory of personal tools and to call police for an investigation of any personal tool loss claim.

---

[1] Juneau Deposition, p. 12, attached as Appendix A

Second, Mr. Juneau claims Buck Kreihs failed to pay him vacation pay he was entitled to under the collective bargaining agreement when he became disabled pursuant to Article XX of the collective bargaining agreement which provides in part as follows.

> Section 2.    Each employee upon completion of four years of continuous employment from date of employment with the Employer shall be entitled to two weeks  vacation with pay on the basis (10) ten  eight (8) hour days at his regular straight time rate of pay provided such employee during the first three years of the four year period has worked a total of 3,000 hours or more for the Employer and who in his fourth year of the four year period has worked a minimum of 1,000 hours.

The vacation provisions have uniformly and consistently been interpreted to require that an employee must work 1,000 hours during the 12 month period from his anniversary date to the his next anniversary date to qualify for any vacation pay.  Similarly, if an employees ceases his employment for any reason, the vacation provisions have uniformly and consistently been interpreted to require that the employee must work 1,000 from his last anniversary date prior to the date his employment ceases in order to qualify for vacation pay.  Mr. Juneau's date of employment and his anniversary date was October 27, 1995.

During the period October 27, 2000 until he became disabled on April 26, 2001 he worked a total of 848 and one half hours.  This is shown on his payroll records which are attached as Appendix B.  They establish that he worked 246 hours during the period October 27, 2000 until the end of the year, and that he worked a total of 602 and one half hours up until his total permanent disability on April 26, 2001.  Since he had not worked 1,000 hours during this period, under language of Section 2 of Article XX, and the long established uniform past practice, Mr. Juneau is not entitled to any vacation pay.  (Sworn declaration by Mr. Baraldi).

4

ARTICLE XXI –GRIEVANCE PROCEDURE, and ARTICLE XXII – ARBITRATION, of the collective bargaining agreement between Local 37 and Buck Kreihs Company contains a grievance and arbitration procedure and provides that any disputes or grievances concerning interpretation and application of the agreement "shall be settled in accordance with the" procedure set forth in the contract.    As set forth in Section 2, subparagraph a, under the procedure the first step requests that the "grievance shall be submitted in writing by the Steward to the Foreman or Superintendent within seven (7) days of the alleged infraction".

It is undisputed that the Union has not filed a grievance with the Company concerning Plaintiff's claims his tools were stolen and that he was not paid vacation pay owed under the terms of the collective bargaining agreement.[2]  Plaintiff readily admits that he got along with one of the union stewards,  Wayne English, "just fine"[3] and has offered no evidence the Union breached its duty of fair representation.

## III.   LAW AND ARGUMENT

### A.    Standard of Review

The well known standards for summary judgment derive from the 1986 trilogy:  *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028 (1988); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986); and *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348 (1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955 (1987).   First, a court must look to substantive law to determine the essential elements of a case and who has the burden of proof on each element.  *Anderson*, 477 U.S. at 248.  Second, to prevail on the motion, the moving party simply bears the initial burden of pointing out the absence of evidence supporting the claimant's

---

[2] Sworn declaration of Mr. Baraldi; Juneau Deposition, p. 9, attached as Appendix A.
[3] Juneau Deposition, p. 11, attached as Appendix A.

theory of recovery.  "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case."  *Celotex*, 477 U.S. at 325.

Third, once the moving party has met its initial burden, the Supreme Court has imposed on the non-moving party a directed verdict or judgment as a matter of law standard.  *Anderson*, 477 U.S. at 248-52; *Reeves v. Sanderson Plumbing Products, Inc.,* 120 S.Ct. 2097, 2110 (2000). The non-moving party must produce evidence of "specific facts" that "would be sufficient to carry [the] burden of proof at trial…,"  *Celotex Corp*, 477 U.S. at 327; Fed. R. Civ. P. 56(e).  In other words, the party opposing summary judgment is required to come forward with evidence supporting each element of its case sufficient to allow a reasonable jury to find in its favor.  To defeat the Motion For Summary Judgment, the non-moving party must produce sufficient *material* evidence to create a *genuine* issue of fact.

> [T]he issue of fact must be "genuine." Fed. Rules Civ. Proc. 56 (c), (e).  When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*"....Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

*Matsushita,* 475 U.S. at 586-587 (citations omitted) (emphasis added).

> [T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Anderson,* 477 U.S. at 252.

NewOrleans 245837.1

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge....The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.

*Anderson*, 477 U.S. at 255.

The Court specifically noted that the rules apply even when someone's motive or state of mind is at issue, *Anderson*, 477 U.S. at 256, and provided the following guidance about the use of the summary judgment procedures:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action."

*Celotex*, 477 U.S. at 327.

The Supreme Court reaffirmed its prior decisions in *Anderson* and *Matsushita* in its decision in *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097 (2000). Noting that "[s]ome [courts of appeals] decisions have stated that review is limited to that evidence favorable to the non-moving party...while most have held that review extends to the entire record, drawing all reasonable inferences in favor of the nonmovant," the Court held that "in entertaining a motion for judgment as a matter of law, the court should review all evidence in the record." *Reeves*, 120 S.Ct. at 2110. The Court then reiterated the well-established principle that "the court must draw all *reasonable* inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves*, 120 S.Ct. at 2110 (emphasis added).

**B.    Plaintiff Cannot Establish A Required Element Of His Section 301 Claim Against Buck Kreihs; *i.e.*, That The Union Breached Its Duty Of Fair Representation**

It is well established that "Federal courts lack jurisdiction to decide cases alleging violations of a collective bargaining agreement under the Labor Management Relations Act by an employee against his employer unless the employee has exhausted contractual procedures for

redress". *Meredith v. Louisiana Federation of Teachers,* 209 F.3d 398, 402 (5th Cir. 2000). The only exception to this principle is where the employee can prove he requested the union to file a grievance on his behalf and the union refusal to pursue the grievance was "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916 (1967); *Air Line Pilots Association v. O'Neill,* 499 U.S. 65, 111 S.Ct. 1127, 1130, 1135-36 (1991).

Plaintiff has filed what is known as a "hybrid" duty of fair representation/breach of contract claim under Section 301 of the LMRA, 29 U.S.C. 185. See e.g. *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 163-65, 103 S.Ct. 2281, 2290-2291 (1983) (discussing nature of "hybrid Section 301/ fair representation claim").

Plaintiff can prevail on his Section 301 claim only if he shows <u>both</u> 1) the union breached its duty of fair representation, <u>and</u> 2) Buck Kreihs Company violated the collective bargaining agreement. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 563-64, 110 S.Ct. 1339, 1344 (1990); see also *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 62, 101 S.Ct. 1559, 1563-64 (1981) (breach of duty of fair representation is an "indispensable predicate" to a 301 action against the employer); *DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2290-91 (to prevail against either the employer or the union, employee must show both a breach of duty of fair representation by union, and a breach of bargaining agreement by employer). Thus, if Plaintiff cannot show the union breached its duty of fair representation, this suit must be dismissed without reference to any merits of the underlying breach of contract claim. See e.g. *DelCostello,* 103 S.Ct. at 2290-91.

To prove a breach of the duty of fair representation, Plaintiff must show that the unions' conduct was "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916 (1967); *Air Line Pilots Association v. O'Neill,* 499 U.S. 65, 111 S.Ct. 1127, 1130,

8

1135-36 (1991). Mere negligence, carelessness, inadvertence, poor judgment, or even an honestly mistaken belief that a grievance lacks merit is not a breach of the duty of fair representation. See e.g. *Coe v. United Rubber, Cork, Linoleum,* 571 F.2d 1349, 1350 (5th Cir. 1978); *Ross v. Runyon,* 156 FRD 150, (S.D. Tex. 1994); *Baker v. Frank,* 723 F.Supp. 1183, 1187-88 (W.D. La. 1989).

> As the Supreme Court stated in the *O'Neill* case:

> > As we acknowledged above, Congress did not intend judicial review of a union's performance to permit the court to substitute its own view of the proper bargain for that reached by the union. Rather, Congress envisioned the relationship between the courts and labor unions as similar to that between the courts and the legislature. Any substantive examination of a union's performance, therefore, must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.

*O'Neill,* 111 S.Ct. at 1135.

These same standards apply to all duty of fair representation cases. *Id.* at 1130, 1135.

It is undisputed a grievance was not filed with the company concerning Plaintiff's claims his tools were stolen and that he was not paid vacation pay under the collective bargaining agreement. Accordingly, under *Meredith v. Louisiana Federation of Teachers,* 209 F.3d 398, 402 (5th Cir. 2000) the Court does not have jurisdiction to decide Plaintiff's claim the collective bargaining agreement was breached unless he can first establish he requested the Union steward to file a grievance concerning both claims on his behalf, and the Union violated its duty of fair representation by not pursuing the grievance.

Plaintiff readily admits he got along with the Union steward just fine and has offered no evidence the union acted discriminatorily or in bad faith toward him. Absent a meritorious claim the Union breached its duty of fair representation, Plaintiff's claims against both the Union and

Buck Kreihs Company must be dismissed.  *Meredith v. Louisiana Federation of Teachers,* *supra.*

### C.  Plaintiff's Vacation Pay Claims Must Be Dismissed For The Additional Reason That He Cannot Establish Buck Kreihs Breached The Collective Bargaining Agreement[4]

Plaintiff claims that when he became totally and permanently disabled on April 26, 2001 he was due vacation pay under the provisions of ARTICLE XX – VACATION PAY of the collective bargaining agreement. He was not.  The contractual language provides an employee must work 1,000 hours during the 12 month period from his anniversary date to the his next anniversary date to qualify for any vacation pay.  The vacation provisions have uniformly and consistently been interpreted to require that an employee must work 1,000 hours during the 12 month period from his anniversary date to the his next anniversary date to qualify for any vacation pay.  Similarly, if an employees ceases his employment for any reason, the vacation provisions have uniformly and consistently been interpreted to require that the employee must work 1,000 from his last anniversary date prior to the date his employment ceases in order to qualify for vacation pay.  Mr. Juneau did not work 1,000 hours from his last anniversary date until he ceased working for  Buck Kreihs Company on April 26, 2001 and, accordingly, under the long established uniform past practice is not entitled to any vacation pay.

Since there is no viable claim for vacation pay, Plaintiff's claim for penalties under La. R.S. §§ 23:631-32 must also be dismissed.

---

[4] Defendant also submits Plaintiff cannot establish Buck Kreihs Company breached the collective bargaining agreement with respect to the tools Plaintiff claims were stolen.  However, since there are disputed issues of fact on this issue, and the claim must be dismissed in any event as set forth above, Defendant is not pursuing this separate argument in its Motion For Summary Judgment.

10

### D. Plaintiff's State Law Claims Are Preempted

Plaintiff alleges certain state law claims for negotiorum gesio and vicarious liability "in the event that Plaintiff was not covered by the collective bargaining agreement". Since Plaintiff is covered by the collective bargaining agreement, presumably Plaintiff is not pursuing the state law claims. In any event, the claims would be preempted.

Section 301 of the LMRA provides the requisite jurisdiction and remedies for individual employees covered under the terms of a collective bargaining agreement between their employer and union. *Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir. 1994). Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined under this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

The preemptive effect of Section 301 is well recognized and applies to causes of action arising in contract or tort. *Id.*; *United Steelworkers v. Rawson*, 495 U.S. 362, 369, 110 S.Ct. 1904, 1909 (1990); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-11, 105 S.Ct. 1904, 1910-11 (1985).

Section 301 preemption occurs when a decision on a state law claim necessarily involves the terms of a CBA or when the application of state law to a dispute requires interpretation of the CBA. *Thomas*, 39 F.3d at 616. When either of these factors exists, a claim either must be treated one arising under section 301 or dismissed as preempted. *Id.* at 617; *Allis-Chambers*, 71 U.S. at 220; 105 S.Ct. at 1915.

NewOrleans 245837 1

When evaluation of a state law claim is "inextricably intertwined with consideration of the terms of [a] collective bargaining agreement," the state law claim is preempted by federal labor contract law. *Meredith v. Louisiana Fed of Teachers,* 164 LRRM 2099

## IV.    **CONCLUSION**

Defendant, Buck Kreih Company, submits Plaintiff's claims are particular well suited for resolution through the Fed. R. Civ. Proc. 56 procedures, and requests that Plaintiff's claims be dismissed in their entirety.

Respectfully submitted,

Robert K. McCalla
(LA Bar Roll No. 9233)
Fisher & Phillips LLP
201 St. Charles Avenue
Suite 3710
New Orleans, Louisiana  70170
Telephone:  (504) 522-3303
Facsimile:  (504) 529-3850

**COUNSEL FOR DEFENDANT,**
**BUCK KREIHS COMPANY, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served via hand delivery to:

| | | |
|---|---|---|
| Robert E. McKnight, Jr. | | William Lurye |
| Murphy & McKnight, LLC | | Andrea J. Wilkes |
| 862 Camp Street. | and | Robein, Urann & Lurye |
| New Orleans, LA  70130 | | 2540 Severn Avenue |
| | | Suite 400 |
| | | Metairie, LA  70002 |

on this 30th day of November, 2004.

ROBERT K. McCALLA

13

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MARK T. JUNEAU | * | CIVIL ACTION |
| Plaintiff | * | NO: 03-3153 |
| | * | |
| VERSUS | * | |
| | * | SECTION: "S" (4) |
| BUCK KREIHS CO., INC., AND | * | |
| INTERNATIONAL ASSOCIATION OF | * | JUDGE LEMMON |
| MACHINISTS AND AEROSPACE WORKERS, | * | |
| CRESCENT CITY LODGE LOCAL 37, | * | MAGISTRATE, |
| AFL-CIO | * | JUDGE ROBY |
| Defendants. | * | |

* * * * * * * * * * * * * * * * * *

* * * * * *

Deposition of MR. MARK T. JUNEAU, 30486 Erin

Drive, LaCombe, Louisiana 70445, taken on the 22nd of

November, 2004, at the Law Offices of Fisher & Phillips,

LLP, 201 St. Charles Avenue, Suite 3710, New Orleans,

Louisiana 70170.

* * * * * *

ORIGINAL

REPORTED BY:

LAINEY B. MARGAVIO, CCR

Certified Court Reporter

```
 1      A.    You got me.

 2      Q.    Does that sound right?

 3      A.    I don't know.

 4      Q.    And who was the other one?

 5      A.    Wayne English.

 6      Q.    Anybody else?

 7      A.    No, not that I'm aware of.

 8      Q.    And what was the job of the union stewards?

 9      A.    To notify on union meetings, if you were a due

10  payer.

11      Q.    Anything else?

12      A.    No, that is it.

13      Q.    Okay.  You knew Wayne English?

14      A.    Yes.

15      Q.    You got along with him fine?

16      A.    Just fine.

17      Q.    You knew Merlin Vosbein?

18      A.    Yes.

19      Q.    You got along with him fine?

20      A.    So-so.

21      Q.    What was the problem with Mr. Vosbein?

22      A.    He liked to drink a lot.

23      Q.    How did that cause you a problem?

24      A.    He just wasn't very professional.

25      Q.    Describe that for me.
```

1    A.    Wouldn't talk to me.

2    Q.    Anything else?

3    A.    No.

4    Q.    As an inside machinist at Buck Kreihs, you were

5    covered by a union contract between Buck Kreihs and

6    Local 37 Machinists Union?

7    A.    That's correct.

8    Q.    And you were aware that there was a grievance

9    procedure in that contract?

10    A.    Yes.

11    Q.    And while you were employed by Buck Kreihs, did

12    you ever file a grievance under the union contract?

13    A.    No, sir.

14    Q.    Did you ever try to file a grievance?

15    A.    No, sir.

16    Q.    I want to refer to the complaint that you filed

17    in this matter.

18         MS. WILKES:

19              I've got it.  Thanks.

20    EXAMINATION BY MR. MCCALLA:

21    Q.    In Paragraph 6 it alleges, "In April of 2001,

22    plaintiff suffered an injury that prevented him from

23    working as an inside machinist for Buck Kreihs."  Is

24    that true?

25    A.    That's correct.

1       Q.   Where did you suffer the injury?

2       A.   At home.

3       Q.   What were you doing?

4       A.   My mother-in-law gave me some outside lights to

5   put around the garden for our anniversary; my wife and

6   I's anniversary.  Prior to that year -- that year we had

7   a real bad dry spell.  And the pine trees, what happens,

8   it sucks all the water from the ground.  So they have

9   these huge holes in the ground.  And I was walking

10  around at night; didn't see a hole; stepped into one of

11  these sinkholes; buckled my knee and threw my back out

12  completely.

13      Q.   And as I understand, you have been disabled

14  since then?

15      A.   Yes, sir.

16      Q.   You are permanently disabled?

17      A.   Yes, sir.

18      Q.   I take it the accident had nothing to do with

19  Buck Kreihs or working at Buck Kreihs?

20      A.   No, sir.  But I will add that one of the

21  employees said, "Why don't you say it happened at Buck."

22  And I said, "Because it did not."

23      Q.   Who told you that?

24      A.   It was one of the outside machinists.  I'm not

25  sure of his name.

Run Date: 11/19/04  CLM                                  2000 Buck Kreihs Payroll Files                                    Page: 1
P/R Date: 11/19/04                                      PAYROLL CHECK HISTORY REPORT                                     Time: 09:05 AM
                                                       DETAIL FOR 01/01/00 THRU 12/31/00
                                                          SORTED BY EMPLOYEE NUMBER

DEPARTMENT NO.  00 MAIN DEPARTMENT

| EMPLOYEE/ | | REG | O/T | GROSS | FEDERAL | FICA | MEDICARE | STATE | OTHER | OTHER | CHECK |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CHK DATE | CHK NO | HOURS | HOURS | WAGES | W/H | W/H | W/H | W/H | TAXES | DEDUCTIONS | AMOUNT |
| 00-M0036 | Juneau, Mark | | | SSN: 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 | | | | | | | |
| 01/11/00 | 033280 | 32.00 | 0.00 | 603.20 | 67.99 | 33.73 | 7.89 | 15.36 | 0.00 | 59.20 | 424.03 |
| 01/11/00 | 033455 | 36.00 | 0.00 | 678.60 | 73.19 | 37.94 | 8.87 | 17.40 | 0.00 | 66.60 | 474.60 |
| 01/18/00 | 033617 | 16.00 | 0.00 | 301.60 | 22.19 | 16.86 | 3.94 | 7.20 | 0.00 | 29.60 | 221.81 |
| 01/25/00 | 033792 | 8.00 | 0.00 | 150.80 | 1.79 | 8.43 | 1.97 | 3.12 | 0.00 | 14.80 | 120.69 |
| 01/31/00 | 033966 | 24.00 | 0.00 | 452.40 | 42.59 | 25.30 | 5.92 | 11.28 | 0.00 | 44.40 | 322.91 |
| 02/08/00 | 034144 | 32.00 | 0.00 | 603.20 | 62.99 | 33.73 | 7.89 | 15.36 | 0.00 | 59.20 | 424.03 |
| 02/15/00 | 034312 | 32.00 | 3.50 | 702.16 | 76.87 | 39.46 | 9.23 | 18.13 | 0.00 | 65.68 | 492.79 |
| 02/22/00 | 034483 | 40.00 | 0.00 | 754.00 | 83.39 | 42.16 | 9.86 | 19.44 | 0.00 | 74.00 | 525.15 |
| 02/29/00 | 034655 | 32.00 | 0.00 | 603.20 | 62.99 | 33.73 | 7.89 | 15.36 | 0.00 | 59.20 | 424.03 |
| 03/06/00 | 034814 | 40.00 | 0.00 | 754.00 | 83.39 | 42.16 | 9.86 | 19.44 | 0.00 | 74.00 | 525.15 |
| 03/14/00 | 035151 | 32.00 | 0.00 | 603.20 | 62.99 | 33.73 | 7.89 | 15.36 | 0.00 | 59.20 | 424.03 |
| 03/21/00 | 035343 | 40.00 | 7.00 | 951.92 | 111.14 | 53.63 | 12.54 | 24.99 | 0.00 | 86.35 | 662.67 |
| 03/28/00 | 035522 | 32.00 | 0.00 | 603.20 | 62.99 | 33.73 | 7.89 | 15.36 | 0.00 | 59.20 | 424.03 |
| 04/04/00 | 035687 | 24.00 | 0.00 | 452.40 | 42.59 | 25.30 | 5.92 | 11.28 | 0.00 | 44.40 | 322.91 |
| 04/11/00 | 035856 | 24.00 | 0.00 | 452.40 | 42.59 | 25.30 | 5.92 | 11.28 | 0.00 | 44.40 | 322.91 |
| 04/18/00 | 036007 | 40.00 | 0.00 | 754.00 | 83.39 | 42.16 | 9.86 | 19.44 | 0.00 | 74.00 | 525.15 |
| 04/25/00 | 036172 | 40.00 | 0.00 | 754.00 | 83.39 | 42.16 | 9.86 | 19.44 | 0.00 | 74.00 | 525.15 |
| 05/02/00 | 036356 | 32.00 | 0.00 | 603.20 | 62.99 | 33.73 | 7.89 | 15.36 | 0.00 | 59.20 | 424.03 |
| 05/09/00 | 036530 | 24.00 | 0.00 | 452.40 | 42.59 | 25.30 | 5.92 | 11.28 | 0.00 | 44.40 | 322.91 |
| 05/16/00 | 036700 | 39.00 | 0.00 | 735.15 | 80.84 | 41.11 | 9.61 | 18.93 | 0.00 | 72.15 | 512.51 |
| 05/23/00 | 036870 | 21.50 | 0.00 | 405.28 | 36.22 | 22.66 | 5.30 | 10.00 | 0.00 | 39.78 | 291.32 |
| 05/30/00 | 037089 | 16.00 | 0.00 | 301.60 | 22.19 | 16.86 | 3.94 | 7.20 | 0.00 | 29.60 | 221.81 |
| 06/06/00 | 037273 | 32.00 | 0.00 | 603.20 | 62.99 | 33.73 | 7.89 | 15.36 | 0.00 | 59.20 | 424.03 |
| 06/13/00 | 037445 | 40.00 | 0.50 | 758.14 | 65.38 | 42.98 | 10.05 | 19.83 | 0.00 | 74.93 | 534.97 |
| 06/20/00 | 037619 | 8.00 | 0.00 | 150.81 | 1.80 | 8.43 | 1.97 | 3.12 | 0.00 | 14.80 | 120.69 |
| 07/11/00 | 038522 | 8.00 | 0.00 | 150.80 | 1.79 | 8.43 | 1.97 | 3.12 | 0.00 | 14.80 | 120.69 |
| 08/15/00 | 039932 | 32.00 | 0.00 | 619.20 | 65.39 | 34.72 | 8.12 | 15.84 | 0.00 | 59.20 | 435.93 |
| 09/26/00 | 041033 | 40.00 | 0.00 | 774.00 | 86.39 | 43.40 | 10.15 | 20.04 | 0.00 | 74.00 | 540.02 |
| 10/03/00 | 041201 | 32.00 | 0.00 | 619.20 | 65.39 | 34.72 | 8.12 | 15.84 | 0.00 | 59.20 | 435.93 |
| 10/10/00 | 041421 | 40.00 | 0.00 | 774.00 | 86.39 | 43.40 | 10.15 | 20.04 | 0.00 | 74.00 | 540.02 |
| 10/17/00 | 041596 | 36.00 | 0.00 | 696.60 | 75.89 | 39.06 | 9.14 | 17.94 | 0.00 | 66.60 | 487.97 |
| 10/24/00 | 041789 | 32.00 | 0.00 | 619.20 | 65.39 | 34.72 | 8.12 | 15.84 | 0.00 | 59.20 | 435.93 |
| 10/24/00 | 041790 | 80.00 | 0.00 | 1,548.00 | 0.00 | 86.80 | 20.30 | 0.00 | 0.00 | 148.00 | 1,292.90 |
| 10/31/00 | 042127 | 24.00 | 0.00 | 464.40 | 44.39 | 26.04 | 6.09 | 11.64 | 0.00 | 44.40 | 331.84 |
| 11/07/00 | 042231 | 24.00 | 0.00 | 464.40 | 44.39 | 26.04 | 6.09 | 11.64 | 0.00 | 44.40 | 331.84 |
| 11/14/00 | 042232 | 32.00 | 0.00 | 619.20 | 65.39 | 34.72 | 8.12 | 15.84 | 0.00 | 59.20 | 435.93 |
| 11/20/00 | 042358 | 38.00 | 0.00 | 735.30 | 81.14 | 41.23 | 9.64 | 18.99 | 0.00 | 70.30 | 514.00 |
| 11/28/00 | 042515 | 24.00 | 0.00 | 464.40 | 44.39 | 26.04 | 6.09 | 11.64 | 0.00 | 44.40 | 331.84 |
| 12/05/00 | 042676 | 32.00 | 0.00 | 619.20 | 65.39 | 34.72 | 8.12 | 15.84 | 0.00 | 59.20 | 435.93 |
| 12/12/00 | 042836 | 32.00 | 0.00 | 619.20 | 65.39 | 34.72 | 8.12 | 15.84 | 0.00 | 59.20 | 435.93 |
| 12/19/00 | 044047 | 24.00 | 0.00 | 464.40 | 44.39 | 26.04 | 6.09 | 11.64 | 0.00 | 44.40 | 331.84 |
| 12/26/00 | 044219 | 16.00 | 0.00 | 309.60 | 23.39 | 17.36 | 4.06 | 7.44 | 0.00 | 29.60 | 227.75 |
| M0036 | TOTAL: | 1282.50 | 11.00 | 24,755.16 | 2,381.35 | 1,386.47 | 324.26 | 589.49 | 0.00 | 2,392.99 | 17,680.60 |
| DEPT 00 TOTAL: | | 1282.50 | 11.00 | 24,755.16 | 2,381.35 | 1,386.47 | 324.26 | 589.49 | 0.00 | 2,392.99 | 17,680.60 |

2000 Buck Kreihs Payroll Files  Page: 2
P/R Date: 11/19/04  PAYROLL CHECK HISTORY REPORT  Time: 09:05 AM
DETAIL FOR 01/01/00 THRU 12/31/00
SORTED BY EMPLOYEE NUMBER

DEPARTMENT NO:  00 MAIN DEPARTMENT

| EMPLOYEE/ CHK DATE | CHK NO | REG HOURS | O/T HOURS | GROSS WAGES | FEDERAL W/H | FICA W/H | MEDICARE W/H | STATE W/H | OTHER TAXES | OTHER DEDUCTIONS | CHECK AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| REPORT TOTAL: | | 1282.50 | 11.00 | 24,755.16 | 2,381.35 | 1,386.47 | 324.26 | 589.49 | 0.00 | 2,392.99 | 17,680.60 |

Run Date: 11/19/04   CLM
P/R Date: 11/19/04

2001 Buck Kreihs Co. Payroll Files
PAYROLL CHECK HISTORY REPORT
DETAIL FOR 01/01/01 THRU 12/31/01
SORTED BY EMPLOYEE NUMBER

Page 1
Time: 01:55 PM

DEPARTMENT NO:  00 MAIN DEPARTMENT

| EMPLOYEE/ CHK DATE | CHK NO | REG HOURS | O/T HOURS | GROSS WAGES | FEDERAL W/H | FICA W/H | MEDICARE W/H | STATE W/H | OTHER TAXES | OTHER DEDUCTIONS | CHECK AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 00-M0036 | Juncau, Mark | | | | SSN: 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 | | | | | | |
| 01/02/01 | 043410 | 39.00 | 0.00 | 754.65 | 82.31 | 41.71 | 9.75 | 19.22 | 0.00 | 81.90 | 519.76 |
| 01/09/01 | 043589 | 32.00 | 0.00 | 619.20 | 64.19 | 34.22 | 8.00 | 15.60 | 0.00 | 67.20 | 429.99 |
| 01/16/01 | 043753 | 40.00 | 0.00 | 774.00 | 84.89 | 42.78 | 10.01 | 19.74 | 0.00 | 84.00 | 532.58 |
| 01/23/01 | 043913 | 40.00 | 0.00 | 774.00 | 84.89 | 42.78 | 10.01 | 19.74 | 0.00 | 84.00 | 532.58 |
| 01/30/01 | 044065 | 24.00 | 0.00 | 464.40 | 43.49 | 25.67 | 6.00 | 11.46 | 0.00 | 50.40 | 327.38 |
| 02/06/01 | 043194 | 40.00 | 0.00 | 774.00 | 84.89 | 42.78 | 10.01 | 19.74 | 0.00 | 84.00 | 532.58 |
| 02/13/01 | 044366 | 39.50 | 0.00 | 764.33 | 83.60 | 42.25 | 9.88 | 19.48 | 0.00 | 82.95 | 526.17 |
| 02/20/01 | 044490 | 40.00 | 0.00 | 774.00 | 84.89 | 42.78 | 10.01 | 19.74 | 0.00 | 84.00 | 532.58 |
| 02/28/01 | 044621 | 8.00 | 0.00 | 154.80 | 2.09 | 8.56 | 2.00 | 3.18 | 0.00 | 16.80 | 122.17 |
| 03/06/01 | 044765 | 8.00 | 0.00 | 154.80 | 2.09 | 8.56 | 2.00 | 3.18 | 0.00 | 16.80 | 122.17 |
| 03/13/01 | 044909 | 32.00 | 0.00 | 619.20 | 64.19 | 34.22 | 8.00 | 15.60 | 0.00 | 67.20 | 429.99 |
| 03/20/01 | 045067 | 40.00 | 0.00 | 774.00 | 84.89 | 42.78 | 10.01 | 19.74 | 0.00 | 84.00 | 532.58 |
| 03/27/01 | 045195 | 40.00 | 0.00 | 774.00 | 84.89 | 42.78 | 10.01 | 19.74 | 0.00 | 84.00 | 532.58 |
| 04/03/01 | 045328 | 32.00 | 0.00 | 619.20 | 64.19 | 34.22 | 8.00 | 15.60 | 0.00 | 67.20 | 429.99 |
| 04/10/01 | 045463 | 32.00 | 0.00 | 619.20 | 64.19 | 34.22 | 8.00 | 15.60 | 0.00 | 67.20 | 429.99 |
| 04/17/01 | 045615 | 40.00 | 0.00 | 774.00 | 84.89 | 42.78 | 10.01 | 19.74 | 0.00 | 84.00 | 532.58 |
| 04/24/01 | 045766 | 40.00 | 0.00 | 774.00 | 84.89 | 42.78 | 10.01 | 19.74 | 0.00 | 84.00 | 532.58 |
| 05/01/01 | 045908 | 28.00 | 0.00 | 541.80 | 53.84 | 29.95 | 7.00 | 13.53 | 0.00 | 58.80 | 378.68 |
| 06/05/01 | 046619 | 8.00 | 0.00 | 154.80 | 2.09 | 8.56 | 2.00 | 3.18 | 0.00 | 16.80 | 122.17 |
| M0036 | TOTAL: | 602.50 | 0.00 | 11,658.38 | 1,205.39 | 644.38 | 150.71 | 293.55 | 0.00 | 1,265.25 | 8,099.10 |
| DEPT 00 TOTAL: | | 602.50 | 0.00 | 11,658.38 | 1,205.39 | 644.38 | 150.71 | 293.55 | 0.00 | 1,265.25 | 8,099.10 |
| REPORT TOTAL: | | 602.50 | 0.00 | 11,658.38 | 1,205.39 | 644.38 | 150.71 | 293.55 | 0.00 | 1,265.25 | 8,099.10 |

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MARK JUNEAU** | * | |
| **Plaintiff,** | * | |
| | * | **CIVIL ACTION NO. 03-3153** |
| **v.** | * | |
| | * | **SECT. "S" MAG. "4"** |
| **BUCK KREIHS CO., INC. and** | * | |
| **INTERNATIONAL ASSOCIATION OF** | * | |
| **MACHINISTS AND AEROSPACE WORKERS,** | * | |
| **CRESCENT CITY LODGE LOCAL 37, AFL-CIO** | * | |
| **Defendants.** | * | |

**************************************************

## 28 USC §1746 DECLARATION OF WILLIAM J. BARALDI]

I, William J. Baraldi, say as follows:

I am President of Buck Kreihs Company.

Mark Juneau was employed by Buck Kreihs Company as a machinist on October 27, 1995. As a machinist, Mr. Juneau was in the collective bargaining unit represented by Local 37 of the International Association of Machinists and Aerospace Workers, Crescent City Lodge Local 37, AFL-CIO (hereafter "Local 37") and was covered by the collective bargaining agreements negotiated between Local 37 and Buck Kreihs Company. A copy of the agreement is attached as Appendix A.

I understand Mr. Juneau claims in his law suit that Buck Kreihs Company has breached the collective bargaining agreement with Local 37 in two respects.

First, Mr. Juneau claims that under the collective bargaining agreement Buck Kreihs is liable for certain tools Plaintiff claims he left on the premise at the time he became disabled on April 26, 2001 pursuant to the following provisions in Article X of the collective bargaining agreement.

Section 2.   It shall be the employee's responsibility to safeguard his tools, and to place them in designated tool box storage areas. The Employer shall only be responsible for the loss of an employee's tools which were lost from areas designed by the Employer, including areas on ships and in the shop and yard. The Union will supply a list of tools required to perform the job in their craft and those which are customarily used by the majority of the Journeymen in their craft. The Employer has the right to require an inventory of personal tools and to call police for an investigation of any personal tool loss claim.

Second, Mr. Juneau claims Buck Kreihs failed to pay him vacation pay he was entitled to under the collective bargaining agreement when he became disabled pursuant to Section 2, Article XX of the collective bargaining agreement which provides as follows.

Section 1.    Each employee covered by this Agreement who has had one year's continuous service from date of employment and has worked 1,000 hours during said year for the Employer, shall receive one week's vacation with pay from the Employer on a basis of five (5) eight (8) hour days at his regular hourly rate of pay.

Section 2.   Each employee upon completion of four years of continuous employment from date of employment with the Employer shall be entitled to two weeks  vacation with pay on the basis (10) ten  eight (8) hour days at his regular straight time rate of pay provided such employee during the first three years of the four year period has worked a total of 3,000 hours or more for the Employer and who in his fourth year of the four year period has worked a minimum of 1,000 hours.

Each employee upon completion of ten full years of continuous employment from date of employment with the Employer shall be entitled to twelve days vacation with pay on the basis of twelve (12) eight (8) hour days at the straight time at his regular hourly rate of pay provided such employee during the first nine years of the ten year period has worked a minimum of 9,000 hours for the Employer and who in his tenth of the ten year period has worked a minimum of 1,000 hours.

Each employee upon completion of fifteen years of continuous employment from date of employment with the Employer shall be entitled to three weeks vacation with pay on the basis of fifteen (15) eight (8) hour days at straight time at his

regular hourly rate of pay provided such employee during the first fourteen years of the fifteen year period has minimum of 14,000 hours of the Employer, and who in his fifteenth year of the fifteen year period has worked a minimum of 1,000 hours.

Section 3.    Vacation pay shall be annual and shall be requested and given within a (30) day period immediately following the year of continuous service of the employee.  Vacation time must be taken within (1) year of qualification.

Section 4.    Vacations earned are not forfeited if for any reason employees covered by this Agreement are separated from the Employer prior to the vacation having been taken or money having been paid in lieu thereof, except for an employee discharged for theft.

Section 5.    Employees will not be penalized in qualifying for vacation privileges because of extended illness or incapacity caused by occupational accident while in the employ of the Employer which involves a necessary absence from work for a period of at least seven or more consecutive days, if properly reported to the Employer by the employee.  Any accident suffered by an employee en route to or from work shall not disqualify said employee from vacation privileges.

Section 6.    Any regular employee who has worked for the Employer for three or more years and who is unable to report for work because of extended illness or incapacity caused by occupational accident or disease for a period of one calendar year shall retain his anniversary date of employment.  Said employee shall not be entitled to the benefits of this section beyond the year in which such illness of accident occurred and shall not be entitled to apply above period of absence towards vacation qualification.

Section 7.    When an employee is called for military service and has worked 1,000 hours but has not completed a full year's period of employment with the Employer, the employee shall be entitled to the equivalent vacation pay under the terms of this Agreement as outlined above.

Section 8.    An employee who has not performed any work for the Employer for a period of seven (7) consecutive calendar weeks from the last work performed for the Employer shall be removed from the Employer's official payroll and the employee will no longer be considered an employee of the Employer.  Should a

NewOrleans 245899 1                         - 3 -

worker be hired for work after the seventh (7th) consecutive calendar week period as set forth in this section, the employee shall be hired as a new employee.  This period may be extended for serious Illness, authorized leave of absence, or accident provided proper medical certificates are furnished the Employer. Certificates shall be furnished on or before the employee reports to work or such other time as the Employer requires.

Section 9.    Any employee due vacation who is discharged for proper cause or who quits before his anniversary date of employment shall be paid pro-rata vacation pay in the next pay period following the anniversary date of vacation.

The vacation provisions have uniformly and consistently been interpreted to require that an employee must work 1,000 hours during the 12 month period from his anniversary date to the his next anniversary date to qualify for any vacation pay.  Similarly, if an employees ceases his employment for any reason, the vacation provisions have uniformly and consistently been interpreted to require that the employee must work 1,000 from his last anniversary date prior to the date his employment ceases in order to qualify for vacation pay.  Mr. Juneau's date of employment and his anniversary date was October 27, 1995.

During the period October 27, 2000 until he became disabled on April 26, 2001 he worked a total of 848 and one half hours. This  is shown on his payroll records which are attached as Appendix B.  They establish that he worked 246 hours during the period October 27, 2000 until the end of the year, and that he worked a total of 602 and one half hours up until his total permanent disability on April 26, 2001.  Since he had not worked 1,000 hours during this period, under language of Section 2 of Article XX, and the long established uniform past practice, Mr. Juneau is not entitled to any vacation pay.

ARTICLE XXI –GRIEVANCE PROCEDURE, and ARTICLE XXII – ARBITRATION, of the collective bargaining agreement between Local 37 and Buck Kreihs Company contains a grievance and arbitration procedure and provides that any disputes or grievances concerning interpretation and application of the agreement "shall be settled in accordance with the" procedure set forth in the contract.  As set forth in Section 2, subparagraph a, under the procedure the first step requests that the "grievance shall be submitted in writing by the Steward to the Foreman or Superintendent within seven (7) days of the alleged infraction".   The company has never received a grievance concerning Mr. Juneau's claims that his tools were stolen or that he did not receive vacation pay.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and is based on my personal knowledge.

Executed on the 24th day of November, 2004.

WILLIAM J. BARALDI

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MARK JUNEAU** | * | |
| **Plaintiff,** | * | |
| | * | **CIVIL ACTION NO. 03-3153** |
| **v.** | * | |
| | * | **SECT. "S" MAG. "4"** |
| **BUCK KREIHS CO., INC. and** | * | |
| **INTERNATIONAL ASSOCIATION OF** | * | |
| **MACHINISTS AND AEROSPACE WORKERS,** | * | |
| **CRESCENT CITY LODGE LOCAL 37, AFL-CIO** | * | |
| **Defendants.** | * | |

**************************************************

## NOTICE OF HEARING

Please take notice that Defendant Buck Kreihs Company, Inc. will bring on for hearing their Motion for Summary Judgment on the 15th of December, 2002 at 10:00 a.m. at the United States Courthouse, Room C551, 500 Camp St., New Orleans, LA 70130 or as soon thereafter as counsel may be heard.

Respectfully submitted,

Robert K. McCalla
(LA Bar Roll No. 9233)
Fisher & Phillips LLP
201 St. Charles Avenue
Suite 3710
New Orleans, Louisiana  70170
Telephone:  (504) 522-3303
Facsimile:  (504) 529-3850

**COUNSEL FOR DEFENDANT,**
**BUCK KREIHS COMPANY, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served via hand delivery to:

Robert E. McKnight, Jr.
Murphy & McKnight, LLC
862 Camp Street
New Orleans, LA  70130

and

William Lurye
Andrea J. Wilkes
Robein, Urann & Lurye
2540 Severn Avenue
Suite 400
Metairie, LA  70002

on this 30th day of November, 2004.

ROBERT K. McCALLA